UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CYNTHIA and BRUCE CARPENTER,

                        Plaintiffs,

      -v-                                                6:10-CV-0339

NANCY ASTOR-WHITE and GLEN BROOK
ARABIANS, LLC,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID N. HURD
United States District Judge

## DECISION and ORDER

Currently pending are motions in limine to preclude certain evidence in the trial of Cynthia and Bruce Carpenter versus Nancy Astor-White and Glen Brook Arabians, LLC.

Plaintiffs first move to exclude the testimony of defendants' expert, William Hughes. Mr. Hughes' initial report concluded that Nikolai was not aggressive, that Kirby Sage Farrell's handling of the horse was appropriate, and that factors such as the horse's unfamiliarity with his surroundings and the lack of eye contact between the horse and handler Brooke Farley caused the horse to spook and bolt.

Plaintiffs contend Mr. Hughes is not an animal behaviorist nor certified in animal psychology and lacks the required expertise to provide an opinion as to Farrell's handling of the horse. They also argue his testimony is unreliable because it is purely anecdotal and not based on any recognized methodology. Defendants oppose and contend Mr. Hughes is qualified.

Rule 702 of the Federal Rules of Evidence provides that a witness must be properly qualified to testify on matters that are scientific, technical, or specialized in nature. A witness may be qualified as an expert by knowledge, skill, experience, training, or education. Further, an expert's testimony must be based on sufficient facts or data; the testimony must be the product of reliable principles and methods; and the expert must have reliably applied the principles and methods to the facts of the case. The description "scientific, technical, or other specialized knowledge" is broad and includes both "experts in the strict sense of the word," such as scientists, and "the large group sometimes called skilled witnesses, such as bankers or landowners testifying to land values." United States v. Mejia, 545 F.3d 179, 188–89 (2d Cir. 2008) (internal quotations omitted). Thus, an expert may be qualified based on practical experience; professional education is not a prerequisite. Further, expert opinion "requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." Riegel v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir. 2006).

Mr. Hughes is an equine appraiser, breeder, and trainer. He has trained and handled more than 2,500 Arabian horses over the past fifty years. He owns and operates an Arabian training and breeding facility in California, and has been a professor of horse training at California State Polytechnic University for forty years. With respect to his methodology, Mr. Hughes relied upon pleadings, deposition transcripts, and other facts in the record, coupled with his personal experience in handling and training horses to reach his conclusions. Accordingly, subject to the laying of a proper foundation, Mr. Hughes may testify as an expert and plaintiffs' motion will be denied.

Plaintiffs also move to exclude Mr. Hughes' supplemental report on the basis that it is untimely and includes different opinions than those contained in his initial report. Expert disclosures were due November 11, 2011. Defendants submitted Mr. Hughes' initial three page report by this deadline. However, his supplemental report was filed on January 17, 2012. Plaintiffs contend the supplemental report includes an additional opinion that the incident resulted from the equipment the horse was wearing and the arena where he was being trained. Defendants oppose and argue plaintiffs were aware of the additional time and information needed by Mr. Hughes, and in fact contributed to the delay. They also contend the supplemental report builds on the initial report, and is not a new opinion.

Federal Rule of Civil Procedure 26(e) permits a party who has made a disclosure under Rule 26(a) to supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or as ordered by the court. With respect to expert witness disclosures made under Rule 26(a)(2)(B), any additions or changes must be disclosed by the time the party's pretrial disclosures are due.

Mr. Hughes' report submitted on the November 11, 2011, deadline specifically requested that he be furnished with additional items to assist him in forming his final opinion. Those items included photographs of the horse and the training arena, further information on the horse's pedigree, and information regarding the equipment the horse was wearing and any other items inside the arena that day. Further, in a November 16, 2011, status conference, defendants' counsel advised plaintiffs' counsel that Mr. Hughes needed additional information to finalize his report. Defendants' counsel followed up with a letter to

plaintiffs' counsel the same day requesting that information from plaintiffs. Plaintiffs' counsel acknowledged defendants' request via letter dated November 22, 2011, noted the "preliminary" nature of the report, and agreed to provide the additional information to defendants as soon as possible. Plaintiffs' counsel disclosed the requested items on December 20, 2011. Defendants' counsel received the information the following day and immediately forwarded it to Mr. Hughes.

Additionally, a deposition was conducted of plaintiff's expert, Dr. Sue McDonnell on December 14, 2011. That deposition transcript was received in early January and sent by defendants to Mr. Hughes on January 6, 2012. Mr. Hughes then reviewed the additional items and Dr. McDonnell's deposition transcript and issued his supplemental report on January 17, 2012.

Based on the fact that plaintiffs were aware of Mr. Hughes' need for additional information and that his report was not yet finalized, coupled with plaintiffs' delay in providing the required materials to him and the late date of plaintiffs' expert's deposition, plaintiffs cannot now preclude the supplemental report as untimely. Further, the report does not contain new or different opinions. It builds on the initial report which noted the inexperience and inattention of plaintiff's handler Farley. Finally, the supplemental report was disclosed prior to the January 24, 2012, pretrial disclosure deadline set by this court.

Plaintiffs next move to preclude defendants' expert, Dr. David Hootnick, from testifying that plaintiff's current condition is caused by chronic obstructive pulmonary disease ("COPD"), or emphysema, and not from the injuries she sustained the day of the incident. Dr. Hootnick is a licensed and trained orthopedist who examined the plaintiff. He did not diagnose plaintiff with emphysema but contends the findings of plaintiff's treating physicians

and diagnostic reports indicate findings consistent with pre-existing COPD, or emphysema. According to Dr. Hootnick, plaintiff's injuries from the day of the incident healed uneventfully, ruling them out as a cause of her current condition. Plaintiffs argue Dr. Hootnick is not qualified to offer an opinion regarding emphysema because it is outside his area of expertise. Defendants oppose and argue Dr. Hootnick's qualifications are not limited to orthopedics; rather he is certified in medicine and completed his internship in internal medicine, rendering him qualified to read and interpret x-rays, CT scans, and pulmonary angiogram reports and findings.

Based upon Dr. Hootnick's purported training and experience as an orthopedist, he is not qualified by knowledge, skill, experience, training, or education to offer an expert opinion as to the condition of emphysema or that such condition caused her current symptoms. Dr. Hootnick is free to testify that plaintiff's injuries from the day of the incident have fully healed and that she is not disabled as a result. However, he is precluded from testifying that her current condition or symptoms are caused by emphysema or pre-existing COPD. Accordingly, plaintiffs' motion will be granted and Dr. Hootnick will be precluded from testifying as to whether emphysema caused or contributed to plaintiff Cynthia Carpenter's disability.

Next, defendants move to preclude the testimony of plaintiffs' expert, Dr. Sue McDonnell. Dr. McDonnell's report opined that the chain shank used by Farrell was inhumane; that it actually trained Nikolai to pull away until the handler could no longer maintain control; and that this type of punishment often evokes a state of hyper vigilance in a horse and can lead to what is known as spookiness. Further, she explained that the training at defendants' farm is the type that leads to a horse suppressing behavioral signs of fear

which would otherwise warn a handler of impending panic or aggression. Finally, Dr. McDonnell's report notes that these behavior problems, coupled with the horse's past medical history including a fractured jaw, should have resulted in a specialized veterinary evaluation before shipping Nikolai to plaintiffs' farm. She concluded that defendants knew of Nikolai's dangerous propensities but failed to warn plaintiffs of the same.

Defendants first argue it is for the jury to determine whether Nikolai had dangerous propensities and Dr. McDonnell's testimony in that regard sets forth a legal conclusion and will not serve to assist the trier of fact. Further, they assert that her opinion as to the horse's dangerousness is not based on sufficient facts or data, and contradicts the knowledge of fact witnesses. Defendants also contend Dr. McDonnell's testimony is not reliable because she did not identify the scientific methodology she used. She never saw the horse and never contacted anyone associated with plaintiffs' farm and thus her testimony regarding the chain shank used on Nikolai is based upon speculation and conjecture. Finally, defendants argue Dr. McDonnell's failure to rule out the variety of circumstances which may cause a horse to spook or bolt as Nikolai did on the date o the incident renders her opinion unreliable.

Dr. McDonnell is a certified applied animal behaviorist and expert in the field of animal psychology. Notably, defendants do not take issue with her qualifications. Regarding her scientific methodology, she need not rule out other causes for Nikolai's behavior nor determine exactly what caused him to spook on the day of the incident because her opinion is that defendants' use of punishment and failure to seek proper medical evaluation greatly increased the risk of the incident on November 7, 2009. The knowledge of vicious propensities and the failure to warn of the same is enough to constitute negligence in this case. Dr. McDonnell testified that in reaching her opinions, she followed a scientific, peer-

reviewed methodology, and interpreted deposition transcripts using her experience and education. Accordingly, subject to the laying of a proper foundation, Dr. McDonnell may testify as an expert and defendants' motion will be denied.

Defendants also move to preclude plaintiffs from introducing evidence of Cynthia Carpenter's future medical expenses and lost earnings because such damages are purely speculative. In a pre-trial telephone conference held on February 6, 2012, plaintiffs indicated that they are not seeking damages for future medical expenses or loss of earnings. Therefore defendants' motion will be denied as moot.

Finally, plaintiffs move to preclude defendants from presenting testimony that plaintiff Cynthia Carpenter assumed the risk of injury on the day of the incident. The assumption of risk is an affirmative defense asserted by defendants in their answer and may become an issue of law on which the jury may be charged. This issue is more appropriately dealt with at the close of the case, after it is determined whether there is any evidence to support such a defense. Accordingly, plaintiffs' motion will be denied at this time without prejudice to renew.

Therefore, it is

ORDERED that

1. Plaintiffs' motion to exclude the testimony of Mr. William Hughes is DENIED;

2. Plaintiffs' motion to exclude the supplemental report of Mr. William Hughes is DENIED;

3. Plaintiffs' motion to exclude Dr. David Hootnick's testimony that emphysema caused or contributed to plaintiff's disability is GRANTED;

4. Defendants' motion to exclude the testimony of Dr. Sue McDonnell is DENIED;

5.  Defendants' motion to exclude evidence of plaintiff's future medical expenses and loss of earnings is DENIED as moot; and

6.  Plaintiffs' motion to preclude testimony regarding the assumption of risk is DENIED without prejudice to renew.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   February 7, 2012
         Utica, New York.